ANNA E. SHOLES, RESPONDENT, v. LEO EISNER ET AL., APPELLANTS.

Submitted December 11, 1916—Decided March 5, 1917.

1. Because the plaintiff did not produce affirmative proof that his judgment debtor, who petitioned for discharge under the Insolvent Debtors' act, did not appear in person at every subsequent court until discharged, the motion to nonsuit should have been granted, and failing that—this lack of evidence not having been supplied in the further progress of the trial—the motion to direct a verdict should have been granted; and, therefore, the direction of a verdict for the plaintiff was erroneous.

2. The defendant having appeared at the term of the Common Pleas Court, next after presenting his petition, and having been then and there examined, and the court, which could have granted his discharge within that term, held the matter under advisement until a subsequent term and then granted it, the discharge, when so granted, operated to discharge the debtor's sureties on the bond, because the court could not lawfully have granted the discharge unless it were satisfied that the debtor's conduct had been fair, upright and just, which, perforce, must include compliance with the terms of the act which alone would entitle the debtor to his discharge, and which, the discharge, necessarily presupposes that there had been no breach of the condition of the bond.

3. The discharge of an insolvent debtor is a release by act of law from performance of the condition of the bond.

4. It is a general rule that the discharge of the principal works a discharge of the sureties on a bond.

On appeal from the Supreme Court.

For the appellants, *James & Malcolm G. Buchanan.*

For the respondent, *James J. McGoogan.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.    This case comes here on an appeal by appellants from a judgment of the Supreme Court, in favor of the respondent. The grounds of appeal are (1) the refusal of the trial court to nonsuit the plaintiff; (2) the refusal to direct a verdict for defendant; (3) the direction of a verdict for plaintiff.

The action was brought by plaintiff for the alleged breach of a bond under the Insolvent Debtors' act, made by defendants as sureties for Benjamin Markowitz. The bond was given December 17th, 1914, and was conditioned *inter alia* that Markowitz should appear before the then next Common Pleas Court of Mercer county, and petition for the benefit of the act, and appear in person at every subsequent court until discharged. The next term of the Mercer Pleas after the giving of the bond was the January term, 1915. Markowitz duly appeared and petitioned. The breach alleged is

that the said "Benjamin Markowitz named in the said bond, did not appear in person before the Court of Common Pleas holden in the county of Mercer, during the May (1915) term thereof, as provided therein." This was denied by defendants' answer, and the only evidence offered by plaintiff to prove the alleged breach was the offer of the minutes of the Common Pleas, which contained no entry or record to show whether or not Markowitz appeared before that court during the May (1915) term.

The minutes were kept by various persons and were shown to be incomplete, for they contained no entry of the appearance and examination of the insolvent debtor on his petition, although such appearance and examination were duly had. This lack of evidence was not supplied in the further progress of the trial; yet the court denied the defendants' motion to nonsuit and to direct a verdict for defendants, and, on the contrary, directed a verdict for plaintiff. All of which was erroneous.

The defendants adduced testimony tending to show that Markowitz had in fact appeared in person at the May (1915) term of the Common Pleas; and, also, adduced testimony tending to prove a waiver and abandonment by plaintiff of her right to require the further appearance of Markowitz in the insolvency proceedings. But in our view of the case, it is not necessary to consider these questions of evidence.

As already stated, the next term of the Mercer Pleas after the giving of the bond was that of January, 1915, at which it is admitted Markowitz appeared and presented his petition for discharge and was examined. It is also admitted that the Mercer Pleas on February 18th, 1916, made an order discharging the insolvent debtor in customary form, and on the same day appointed an assignee for him, and that he, the debtor, thereupon made a deed of assignment to the assignee.

The act for the relief of persons imprisoned on civil process, commonly called the Insolvent Debtors' act (*Comp. Stat.*, p. 2824), provides in section 11 that if the court, after hearing, shall be satisfied that the conduct of the debtor has

been fair, upright and just, it shall proceed to appoint one or more assignees to whom the debtor shall forthwith execute an assignment of all his real and personal estate, &c., and upon making which assignment and filing the same, the court may direct the sheriff to discharge said debtor from confinement on account of any debts by him previously contracted. It is provided in section 3 that any person arrested ·on process of execution, &c., as provided in section 2, having given bond as therein provided, shall be entitled to make application for his discharge under the act. The discharge, if granted, is from confinement on account of any debts previously contracted. The form of the order of discharge is not printed in the state of the case, but it is stipulated that the order therefor was in customary form. The customary form must, in its nature, be one in conformity to the statute. Therefore, the defendant has been discharged from confinement on account of any debts by him previously contracted, including the plaintiff's demand. It would be anomalous, indeed, if the defendant may be discharged from confinement on such demand, and, consequently from his liability on the insolvent bond on the one hand, and his sureties on the other hand, should be held for the payment of the debt, when their undertaking was to be answerable for it only in case he should not comply with the insolvent laws, and, therefore, not entitled to his discharge. This does not lay out of view the fact that the bond required that the debtor would appear in person at every subsequent court until he should be duly discharged, as a discharge by the Common Pleas necessarily includes a finding that the conduct of the debtor has been fair, upright and just. These requirements are restricted to the debtor's conduct in the insolvency proceedings (*Meliski* v. *Sloan,* 47 N. J. L. 82), and it is not perceived how this debtor could have been fair, upright and just with reference to these proceedings, without having in all things complied with the requirements of the insolvency laws, including appearance in person in court when required to do so. The form of the bond given in this case follows the statutory language contained in section

2 of the act, and concludes, "then the above bond or obligation shall be void and of no effect; otherwise to remain in full force and virtue." In other words, if the insolvent debtor complied with the requirements of the insolvent laws, the bond was to be void and of no effect; that is to say, there was to be no liability on the part of the insolvent debtor's sureties to pay his debt.

So far as appears, there was no impediment in the way of the court's making an order for the discharge upon the day of the examination of the debtor, or at least within a short time thereafter, certainly within the term, for the examination took place on February 18th, and the term did not end until the second Tuesday of May following, that is, May 9th, 1916. It was not until the third term thereafter that the assignee was appointed and the debtor discharged. This delay was not the fault of the debtor, but resulted from the action of the court. For this the debtor should not suffer.

In *Stokes* v. *Hardy,* 71 *N. J. L.* 549, at the hearing and examination of the debtor, objection was made to the further prosecution of the matter on the ground that the defendant's petition had not been filed in compliance with the act. The petition was presented to the court on the 7th of April, 1903, but was not filed in the clerk's office until November 30th following, it having apparently been retained in the possession of the judge during the intervening period. The Common Pleas overruled the objection and at the close of the hearing made an order that Hardy be discharged. After *certiorari* proceedings, in which the order of discharge was set aside in the Supreme Court with direction that the bond should be taken from the files for prosecution, that judgment was removed into this court on error, and Chief Justice Gummere, writing the opinion, observed (at *p.* 551) that after the presentation of the petition, the judge who was sitting should, within a reasonable time, have deposited it in the office of the clerk, where the records and files of court were kept, but that the failure of the judge to do that was something for which Hardy was in no way responsible, and that the Common Pleas Court very properly re-

fused to punish Hardy for its own failure to deposit the petition. The doctrine of this case clearly extends to the one at bar. Markowitz, the insolvent debtor, certainly had a right to presume that his application would, within a reasonably short time, be considered and decided, and he certainly was not responsible for the fact that it was held under advisement for three succeeding terms, and when the court at last gave him his discharge, which it could only have lawfully done upon his compliance with the act, that discharge must certainly be as efficacious as though made on the day the matter was submitted to the court.

In *St. Vincent's Church v. Borough of Madison,* 86 N. J. L. 567, it was held that when an application for a writ of *certiorari* was made within the time prescribed by statute but allowed out of time, the writ would not be invalid, because a justice of the Supreme Court has a constitutional right to deliberately consider all applications made to him and take the same under advisement, and that if the delay in entering a judgment or order be caused by action of the court, the entry will be allowed *nunc pro tunc* as of the time when the party would otherwise have been entitled to it, as it is a rule of practice, as well as of common justice, that the action of the court should not be permitted to work an injury to a party. This doctrine is universal. It was applied in the Court of Chancery in *Grant v. Grant,* 84 N. J. Eq. 81. It extends to every court of general jurisdiction, of which the Court of Common Pleas is one.

The view that when a debtor has been discharged by the Common Pleas under the Insolvent Debtors' act, that discharge by virtue of the statute shall operate to discharge the debtor's sureties on the bond, finds strong support in the case of *Young v. Young,* 45 N. J. L. 197, wherein Chief Justice Beasley said (at *p.* 200):

"It thus appears that the legislature has, by explicit and plain expression, declared that the decree shall order that all claims which have not been presented within the time limited in the rule shall be barred, and that such decree shall have the effect of barring such unpresented claims, and

therefore this court has not the competency to push aside this regulation and to say that claims not so put in shall be suable."

The doctrine of the Young case, applied to the case at bar, would indicate that when the legislature provided that an insolvent debtor should be discharged from arrest provided he made out and delivered to the officer a true and perfect inventory, &c., of all his goods, &c., and should give bond to the plaintiff at whose suit he was arrested, with sufficient surety, with condition required by the statute, and provided further that if upon hearing of his application for discharge the court should be satisfied that his conduct had been fair, upright and just—which, perforce, must include compliance with the terms of the act, which alone would entitle him to a discharge—and then discharges him from confinement on account of the very debt for which he was arrested, that discharge must necessarily presuppose that there had been no breach of the condition of the bond, and that, of course, would operate to discharge the sureties from their obligation. It has been decided that the discharge of an insolvent debtor is a release by act of law from performance of the condition of the bond. *Skillman* v. *Baker,* 18 *N. J. L.* 134, 138; *Kirby* v. *Garrison,* 21 *Id.* 179. And it is a general rule that the discharge of the principal works a discharge of the sureties on a bond. There is nothing in the record before us to take this case out of the general rule.

The judgment will be reversed, to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER. JJ. 14.